Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 90844
Anchorage, AK 99509
(907) 830-1385
(800) 536-1071 facsimile
E-mail: *izorea.law@gmail.com*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Charles Wayne Seldon,<br>    Plaintiff,<br><br>    v.<br><br>The Kishan Group (HANC Hotel, LLC),<br>    Defendant. | )<br>)<br>)<br>)<br>) Case No. 3:25-cv-<br>)<br>)<br>)<br>) |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

COMES NOW, Charles Wayne Seldon, the plaintiff above named, by and through his attorney, Isaac D. Zorea, and respectfully states as follows:

**I. JURISDICTION AND VENUE**

1.1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1981.

1.2. At all relevant times, plaintiff, Charles Wayne Seldon, resided in Anchorage, Alaska 99504, within the District of Alaska.

1.3. At all relevant times, defendant, The Kishan Group (HANC Hotel, LLC), conducted business operations in Anchorage, Alaska, within the District of Alaska, through its ownership and operation of Coast Inn at Lake Hood, and is subject to personal jurisdiction in this District.

1.4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because defendant conducts business in this District and because the events giving rise to plaintiff's claims occurred in this District.

## II. FACTUAL ALLEGATIONS

2.1. Charles Wayne Seldon was employed by Coast Inn at Lake Hood/International Inn, LLC beginning in January 2022. At the time of his hiring, Mr. Seldon was 65 years old and is of African American race.

2.2. Mr. Seldon was hired in January 2022 specifically as a Coast Inn manager, unlike all other hotel managers who were TDX managers until the eventual takeover by HANC.

2.3. During his employment, Mr. Seldon served in three managerial positions: Security Manager, Maintenance Manager, and Safety Manager. Mr. Seldon's salary was $2,692.30 biweekly, equivalent to approximately $6,000 per month when working full-time.

2.4. In addition to managing maintenance for the Coast Inn at Lake Hood, Mr. Seldon also managed maintenance for Alaska Park, as both entities were owned by TDX/International Inn, LLC, located at 3601 C Street Suite 1000-16, Anchorage, Alaska 99503.

2.5. Mr. Seldon performed his duties competently and professionally throughout his employment.

2.6. On October 30, 2023, while responding to an emergency involving a broken sprinkler pipe in room 148, Mr. Seldon was directed to check room 147. When he opened the door to room 147 and stepped inside, he fell through a hole that had been cut directly in front of the door.

2.7. This workplace accident resulted in severe injuries including multiple left-sided rib fractures (ribs 6-11, with displaced fractures of ribs 8-10) and right leg laceration requiring immediate emergency medical treatment. Mr. Seldon required two Fentanyl shots in the ambulance and was hospitalized for eight days at Alaska Regional Hospital.

2.8. Mr. Seldon's total hospital bill was $93,873.65, and his injuries were severe, causing him to lose over 30 pounds, dropping from 199 pounds to 175 pounds since the injury occurred.

2.9. Mr. Seldon filed a workers' compensation claim for his workplace injuries under case number 018097-000026-WC-01.

2.10. When Mr. Seldon returned to work in January 2024, he was working half-day shifts of 4-6 hours due to work restrictions related to his ongoing rib fractures and pain. During this period, workers' compensation was paying half of his monthly salary due to his partial work capacity.

2.11. At the time of his eventual termination, Mr. Seldon was still recovering from his workplace injuries and had six broken ribs, with three healed and three not healed.

2.12. In May 2024, The Kishan Group (HANC Hotel, LLC), a company with more than 15 employees located at 5851 S. Virginia St., Reno, Nevada 89502, acquired Coast Inn at Lake Hood from TDX.

2.13. On May 7, 2024, Mr. Seldon attended what he was told was a fact-finding meeting with the new owners from The Kishan Group regarding his continued employment.

2.14. During this meeting, Mr. Seldon attempted to inform the owner of his disabilities and medical leave status related to his workplace injury. However, the owner "jumped up and stated he did not want to hear it" before Mr. Seldon could even explain his situation, demonstrating an unwillingness to accommodate Mr. Seldon's disability.

2.15. On May 9, 2024, just two days after the fact-finding meeting, Mr. Seldon was terminated by Nicole Nededog, HANC's Operation Manager, on behalf of HANC Hotel, LLC, not TDX.

2.16. The reason given for Mr. Seldon's termination was that he was "no longer needed" and that the owners viewed him "only as a security manager," despite his extensive experience and qualifications in multiple managerial roles.

2.17. Following Mr. Seldon's termination, HANC hired Matt Ross, a white male under the age of 40, as Maintenance Manager. Matt Ross, who does not qualify for the position despite being under 40 years old, had previously worked under Mr. Seldon's supervision at Alaska Park and had significantly less experience than Mr. Seldon.

2.18. Despite Mr. Seldon's qualifications and three managerial roles, defendant offered no alternative lower-level position, while retaining younger, less qualified employees.

2.19. Other Coast Inn employees working for HANC as of December 2024 had not filled out applications either, demonstrating that defendant applied different standards to Mr. Seldon than to other employees.

2.20. The Security Manager position that Mr. Seldon had held was not replaced or filled after his termination, and no lower position was offered to Mr. Seldon despite his qualifications and willingness to work.

2.21. At the time of his termination on May 9, 2024, Mr. Seldon was 67 years old, having been born on October 17, 1956, placing him in the protected class under the Age Discrimination in Employment Act.

2.22. Defendant failed to engage in any interactive process to determine reasonable accommodations for Mr. Seldon's disability, instead choosing immediate termination upon learning of his medical status.

2.23. Following his termination, Mr. Seldon was unable to obtain unemployment benefits due to his work restrictions and the fact that he was not fully healed from his workplace injuries, despite having been able to fully perform his job duties as a manager at Coastal Inn.

2.24. On August 9, 2024, Mr. Seldon filed a complaint with the Anchorage Equal Rights Commission under Complaint No. 24-195, alleging discrimination based on age, race, and disability.

2.25. Mr. Seldon also filed a complaint with the Equal Employment Opportunity Commission under Complaint No. 38B-2024-00041, seeking federal protection under applicable civil rights laws.

2.26. Mr. Seldon received his Right to Sue letter on April 25, 2025, exhausting his administrative remedies and preserving his right to file this federal lawsuit.

2.27. Additional to his age discrimination allegation, Mr. Seldon is also African-American by race, and was suffering from a disability, or was perceived by Defendant to be disabled.

## III. CAUSES OF ACTION

**COUNT I:   VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

3.1. Plaintiff incorporates all the facts and allegations within the paragraphs listed above.

3.2. At all times relevant to this action, defendant was an employer within the meaning of the ADEA, employing more than twenty (20) employees.

3.3. At the time of his termination, plaintiff was 67 years old and therefore a member of the protected class under the ADEA.

3.4. Plaintiff was qualified for his positions and was performing his duties satisfactorily at the time of his termination.

3.5. But for plaintiff's age, defendant would not have terminated his employment. Defendant's decision to terminate plaintiff and hire Matt Ross, a substantially younger replacement who does not qualify for the position, constitutes age discrimination in violation of the ADEA.

3.6. As a direct and proximate result of defendant's age discrimination, plaintiff has suffered damages including lost wages, lost benefits, and other compensatory damages.

**COUNT II:   VIOLATION OF TITLE VII - RACE DISCRIMINATION**

3.7. Plaintiff incorporates all the facts and allegations within the paragraphs listed above.

3.8. At all times relevant to this action, plaintiff is an African American man and therefore a member of a protected class under Title VII.

3.9. Plaintiff was qualified for his employment positions and was performing his duties satisfactorily at the time of his termination.

3.10. Defendant terminated plaintiff because of his race. The decision to terminate Mr. Seldon, an African American manager with extensive experience, while retaining Matt Ross, a white employee who was less qualified for the position Seldon held, demonstrates intentional racial discrimination.

3.11. As a direct and proximate result of defendant's race discrimination, plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

**COUNT III: VIOLATION OF 42 U.S.C. § 1981 - RACE DISCRIMINATION**

3.12. Plaintiff incorporates all the facts and allegations within the paragraphs listed above.

3.13. At all times relevant to this action, plaintiff was a party to an employment contract with defendant's predecessor, and defendant interfered with plaintiff's contractual relationship.

3.14. Defendant's conduct in terminating plaintiff and replacing him with younger, white employees constitutes purposeful discrimination based on plaintiff's race in violation of his rights under 42 U.S.C. § 1981.

3.15. From the circumstances related to Mr. Seldon's termination, it is clear that plaintiff's race played a determinative factor in its decision to terminate his employment.

3.16. As a direct and proximate result of defendant's race discrimination, plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

**COUNT IV: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

3.17. Plaintiff incorporates all the facts and allegations within the paragraphs listed above.

3.18. At the time of his termination, plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff's workplace injuries from October 30, 2023, including six broken ribs (three healed and three not healed), along with his other medical conditions, constitute disabilities under federal law.

3.19. At the time of termination, Mr. Seldon was on workers' compensation with six broken ribs, three of which had healed and three of which had not, constituting a disability under the ADA, and Defendant specifically perceived Mr. Seldon to be a person with a disability.

3.20. When plaintiff attempted to inform the owner of his disabilities and medical leave status, the owner "jumped up and stated he did not want to hear it" before plaintiff could even explain his situation, demonstrating discriminatory animus toward plaintiff's disability.

3.21. Defendant failed to engage in the interactive process to determine reasonable accommodations for plaintiff's disabilities and instead chose to terminate his employment.

3.22. As a direct and proximate result of defendant's disability discrimination, plaintiff has suffered damages including lost wages, lost benefits, medical expenses, emotional distress, and other compensatory damages.

**COUNT V: VIOLATION OF THE TORT OF WRONGFUL DISCHARGE**

3.23. Plaintiff incorporates all the facts and allegations within the paragraphs listed above.

3.24. Plaintiff was satisfactorily performing the key elements of his job in his roles as Security Manager, Maintenance Manager, and Safety Manager.

3.25. Defendant's decision to terminate plaintiff was motivated by his age, race, and disability status, in violation of public policy and federal civil rights laws.

3.26. As a remedy for defendant's conduct, plaintiff requests all available remedies under Alaska law.

**JURY DEMAND**

4.1. Plaintiff hereby demands a trial by jury on all claims and issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against defendant as follows:

1. Full and complete payment of all damages permitted under the ADEA, Title VII, the ADA, 42 U.S.C. § 1981, and the tort of wrongful discharge, including but not limited to lost wages, future lost wages, lost benefits, medical expenses, emotional distress, pain and suffering, punitive damages (where permitted), attorney fees, prejudgment interest, and other permitted remedies, in an amount within the jurisdictional threshold of this Court – with the exact amount to be determined at trial.

2. Reinstatement or, in the alternative, front pay for approximately 29 months to plaintiff's expected retirement date;

3. Punitive damages based on the egregious nature of defendant's discriminatory conduct and willful violation of federal civil rights laws;

4. Injunctive relief to prevent future discrimination;

5. Costs of suit and reasonable attorney fees as provided by law; and

6. Such other relief as the Court deems just and proper.

Dated this 30th day of June 2025.

S/ Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 90844
Anchorage, AK 99509
Telephone: (907) 830-1385
Facsimile: (800) 536-1071
E-mail: *izorea.law@gmail.com*